UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHIE PHILLIPS dba R&D COMPUTERS,<br><br>           Plaintiff(s),<br><br>     v.<br><br>WORLDWIDE INTERNET SOLUTIONS, INC., et al.,<br><br>           Defendant(s). | No.  C05-5125 SBA (BZ)<br><br>**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR ATTORNEYS' FEES** |

On September 7, 2006, the Honorable Saundra Brown Armstrong referred to me for a report and recommendation defendant's motion for attorneys' fees and costs.

Defendant Worldwide Internet Solutions, Inc. (Worldwide) requests $22,105 in attorneys' fees and $351.95 in costs pursuant to the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act), 15

///

///

///

1

U.S.C. § 7706(g)(4).[1]  Section 7706(g)(4) provides that, in an action brought under the statute, "...the court may, in its discretion, require an undertaking for the payment of the costs of such action, and assess reasonable costs, including reasonable attorneys' fees, against any party."

Passed at the end of 2003, the CAN-SPAM Act is, in part, an attempt to guard the "convenience and efficiency of electronic e-mail . . . threatened by the extremely rapid growth of . . . unsolicited commercial electronic mail."  15 U.S.C. § 7701(a)(2).  The Senate referred to spam as "one of the most pervasive intrusions in the lives of Americans."  S. Rep. No. 108-102, at 2 (2003), reprinted in 2004 U.S.C.C.A.N. 2348.  Bulk spam was found to visit serious time and monetary losses on individuals and internet service providers.  See § 7701(a)(3), (4), (6); S. Rep. No. 108-102, at 6-7, 2004 U.S.C.C.A.N., at 2352-53.  In addition, Congress wished to limit intentionally misleading e-mail and the unsolicited disbursement of pornographic messages.  § 7701(a)(8), (5).

Based on these findings, Congress declared that senders of commercial e-mail should not mislead recipients, and that recipients must have a right to decline receipt of such messages.  Sections 7703, 7704, and 7705 create positive and negative duties for senders of commercial spam.  And, while a large portion of enforcement of the Act is left to the Federal

---

[1] The CAN-SPAM Act became operative on January 1, 2004.  As discussed in greater detail below, Congress passed the Act to further public policy goals relating to problems associated with unsolicited e-mail traffic.  See 15 U.S.C. §§ 7701(a), (b).

2

Trade Commission and to state attorneys general, see §§ 7706(a)-(f), a private right of action is also created for providers of internet access who suffer injury cognizable under the Act.  § 7706(g).

Plaintiff is an internet service provider.  Worldwide is a website hosting service.  Plaintiff alleged that Worldwide operated under various internet aliases and endeavored in a common scheme with others to send out mass mailings of deceptive and unsolicited e-mails.  Plaintiff claimed that said e-mails inundated its computer system and constituted violations of the CAN-SPAM Act, sections 7704(a)(1),(2),(3), and (5),[2] sections 7704(b)(1) and (2),[3] and the California Business and Professions Code section 17529.5.

In an Order filed June 20, 2006, Judge Armstrong granted Worldwide's Motion to Dismiss for lack of personal jurisdiction.  Judge Armstrong found that "...Plaintiff has utterly failed to meet his 'high' burden of establishing that this Court has general jurisdiction over [Worldwide]," a Canadian corporation with little demonstrated contact with California.  Judge Armstrong further concluded that specific jurisdiction was lacking, noting that "...Plaintiff's entire

---

[2] Sections 7704(a)(1),(2),(3), and (5), respectively, prohibit false or misleading transmission information; prohibit the use of deceptive subject headings; require the inclusion of return address or comparable mechanism in commercial electronic mail; and require the inclusion of identifier, opt-out, and mailing information in commercial electronic mails.

[3] Sections 7704(b)(1) and (2), respectively, prohibit "address harvesting and dictionary attacks" and bar the automated creation of multiple electronic mail accounts for certain, specified purposes.

argument with respect to specific jurisdiction rests on Plaintiff's understandably mistaken belief...that [Worldwide] is the owner and operator of Cashring."[4]  Although plaintiff had established a possible connection between one defendant, Trevor Hayson, and Cashring, the fact that Worldwide did not own Cashring was fatal to plaintiff's claim against Worldwide. Judge Armstrong granted plaintiff leave to amend his complaint to add the true owner of Cashring and to continue his action against Hayson.

The parties disagree as to the proper standard this Court should apply in determining whether a prevailing defendant, such as Worldwide, should be awarded attorneys fees and costs pursuant to the CAN-SPAM Act.[5]  The issue appears to be one of first impression.

Plaintiff argues that the proper test is that set forth in <u>Christiansburg Garment Co. v. E.E.O.C.</u>, 434 U.S. 412, 422 (1978).  There, the Supreme Court determined that prevailing defendants to civil rights actions may be awarded attorneys fees and costs only by demonstrating that the plaintiff's claims are frivolous, unreasonable, or groundless.

---

[4]   It appears from the Order that Cashring is another corporate entity with clearer connections to California.

[5]   As a threshold issue, plaintiff argues that Worldwide's Motion for Attorneys' Fees was untimely filed. Pursuant to both federal and local rules, such a motion must be filed within fourteen days of the entry of judgment in the matter.  <u>See</u> Fed. R. Civ. P. 54(d)(2)(B); Civil Local Rule 54-6.  Although Judge Armstrong issued her Order in this matter on June 20, 2006, she has not yet entered final judgment.  <u>See, e.g.</u>, <u>In re Application of Gerard Mgndichian</u>, 312 F. Supp. 2d 1250, 1256-58 (C.D. Cal. 2003).  Accordingly, Worldwide's motion is not untimely.

4

Worldwide asserts that there is no frivolousness requirement under the statute, emphasizing the broad language of section 7706(g)(4) and noting that courts may require the posting of security for attorneys' fees and costs incurred in litigation under the statute. See Asis Internet Services v. Optin Global, Inc., 2006 WL 1820902, at *8 (N.D. Cal. June 30, 2006) (discussing the availability of security pursuant to § 7706(g)(4) and Civil Local Rule 65.1-1). Worldwide, however, fails to articulate an alternative standard.

Neither the statute nor its legislative history clarify how Congress intended attorneys fees to be awarded. A plain reading of section 7706(g)(4) leaves the decision to the discretion of the court. Nothing in the legislative history suggests otherwise. See S. Rep. No. 108-102, at 21, 2004 U.S.C.C.A.N., at 2365 (in describing the right of action for internet providers, stating "[t]he court would be permitted to assess the costs of such action, including reasonable attorneys' fees, against any party.").

Nor is any particular interpretation of the text mandated by case law. Language similar to that contained in section 7706(g)(4) was at issue in Christiansburg. See 42 U.S.C. § 2000e-5(k) (stating that the court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . .").[6] In Fogerty v. Fantasy, Inc.,

---

[6] Since Christiansburg, similar statutory language has been held to require the frivolousness analysis. See, e.g., Marbled Murrelet v. Babbitt, 182 F.3d 1091, 1094 (9th Cir. 1999) (interpreting language contained in the Endangered Species Act, allowing the award of attorney's fees to "any party" when deemed "appropriate," as requiring the

5

however, the Supreme Court found that nearly identical language contained in the Copyright Act does not require application of the <u>Christiansburg</u> test.[7]  510 U.S. 517, 534 (1994).  Instead, the Court endorsed the use of an "evenhanded" approach which might include the consideration of factors including, but not limited to, "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence."[8]  <u>Id.</u> at 534 n.19 (internal quotations and citation omitted).  The court explained that a "dual" standard was appropriate to advance "the important policy objectives of the Civil Rights statutes, and the intent of Congress to achieve such objectives through the use of plaintiffs as private attorney[s] general."  <u>Id.</u> at 523 (internal quotation marks and citations omitted).  In contrast, the policies underlying the Copyright Act could be achieved without treating plaintiffs and defendants

---

<u>Christiansburg</u> analysis); <u>Maag v. Wessler</u>, 993 F.2d 718, 719 (9th Cir.1993) (applying <u>Christiansburg</u> to language contained in 42 U.S.C. § 1988, allowing the court discretion to award attorneys' fees to "the prevailing party").

[7]  The Copyright Act provides that ". . . the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.

[8]  Specifically, the Court agreed that such factors could be used to guide a discretionary award of attorneys fees, so long as the factors were applied evenhandedly to plaintiffs and defendants alike and so long as "the factors are faithful to the purposes" of the law.  <u>Fogerty</u>, 510 U.S. at 534 n.19.

dissimilarly.[9]  See id. at 524, 527.

Given the policies and goals underlying passage of the CAN-SPAM Act, and given the enforcement structure included therein, it is debatable which standard should be applied in granting attorneys' fees.  I need not, however, decide between the two.  Applying the less stringent, multi-part test discussed in Fogerty, I conclude that Worldwide's request should be denied.

I begin by noting that plaintiff's case as to Worldwide was adjudicated only on the basis of jurisdiction.  Whether the substance of plaintiff's claim is meritorious has yet to be determined.  Indeed, Judge Armstrong specifically concluded that plaintiff's belief that Worldwide owned Cashring was "understandably mistaken," and allowed plaintiff to amend its complaint to allege the proper defendants.  These factors strongly indicate that plaintiff's suit was neither frivolous nor objectively unreasonable.  Nor is there any evidence that the suit was motivated by anything other than legitimate concerns over the e-mails plaintiff had received.[10]

---

[9] Implementation of the dual standard, the Court explained, maximized the impact of the Civil Rights laws by giving aid to "impecunious" private plaintiffs.  Fogerty, 510 U.S. at 524.  In contrast, copyright plaintiffs "run the gamut from corporate behemoths to starving artists," Id. (internal quotations and citation omitted).  Moreover, "[t]he primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public."  Id.  Insofar as successful litigation on either side of the bar could advance the arts, an evenhanded approach to plaintiffs and defendants was deemed appropriate.  Id. at 527.

[10] In their Reply, Worldwide makes vague accusations that plaintiff and his counsel filed the instant suit merely as a means of profit.  Plaintiff, in turn, filed a Motion to

7

Regarding the balance between compensation and deterrence, there is some indication that members of Congress were concerned that private actions under the statute may be abused. See 150 Cong. Rec. E72-02, 2004 WL 170208, at E73 (January 28, 2004) (extension of remarks by Rep. Dingell) ("It is our intention that [cases brought by internet providers] be based on bona fide violations and not used as tools for anti-competitive behavior among competitors."]. As already noted, however, there is no evidence that plaintiff's claims against Worldwide were ill-motivated or anti-competitive. Moreover, while Worldwide may feel wronged by plaintiff's action, it is the general rule in this country that "parties are to bear their own attorney's fees." Fogerty, 510 U.S. at 533. The American Rule cautions restraint.

Finally, I note that the CAN-SPAM Act is a relatively new piece of legislation confronting novel, complex issues. As another member of this court recently noted in denying defendant's motion to order plaintiff to post security for costs, "this is a new area of law in which the scope of liability is not clear." Asis Internet Services, 2006 WL 1820902, at *8. Like security, the award of attorneys' fees may serve as a strong disincentive to litigating violations of the Act. In turn, the development of this important area of law will likely be stunted. This is certainly not what

---

Strike these portions of defendant's Reply. Because I agree with plaintiff that defendant's request for attorney's fees should be rejected, I **DENY** plaintiff's Motion to Strike as moot. I note in addition, however, that defendant submitted no evidence to support these accusations.

8

Congress intended.

For the reasons discussed above, I recommend that Worldwide's Motion for Attorneys' Fees and Costs be **DENIED**.

Dated: October 19, 2006

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-REFS\PHILLIPS V SOCIALNET\ORDERDENYATRNYFEES.wpd